**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DONTE POWER,

        Petitioner,

    v.                                Civ. No. 19-1055 KWR/SCY

DWAYNE SANTISTEVAN, and
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

        Respondents.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

This Proposed Findings and Recommended Disposition addresses Petitioner Donte Power's habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Doc. 1. The Honorable Kea W. Riggs referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 6. After reviewing the briefs, the state court record, and the relevant law, I recommend finding that the majority of Mr. Power's claims are procedurally defaulted, and those that are not should be denied on the merits.

**BACKGROUND**

1. **<u>Factual Background</u>**

To provide context regarding Mr. Power's claims, I repeat the factual background from the New Mexico Supreme Court's order on direct appeal:

> Yan and Feng Chen owned and operated a restaurant, Golden Star Restaurant, in Albuquerque, New Mexico. On July 9, 2008, around lunch time, Yan left the restaurant to make a food delivery. The Chens' five-year-old son, Henry, was eating lunch at a table in front of the register. While Yan was gone and Feng was working in the front of the restaurant, Feng's mother, who happened to be in the kitchen, heard what sounded like an explosion in the front of the restaurant.

Feng's mother found Feng on the ground with a bullet wound through her chest.
Feng died shortly thereafter.

Only a few hours later, police arrested [Mr. Power] at the nearby Coronado
Mall. Eventually, [Mr. Power] was charged with Feng's murder . . . .

*State v. Power*, No. 32,503, 2012 WL 12371445, at *1 (N.M. Apr. 4, 2012).

**2.  Procedural Background**

On July 25, 2008, a Grand Jury charged Mr. Power with six counts: (1) first degree

murder, second degree murder, and manslaughter, or in the alternative, first degree felony

murder; (2) armed robbery; (3) child abuse; (4) and (5) tampering with evidence; and (6)

resisting, evading, or obstructing an officer. Doc. 10-1 at 1-3 (Ex. A).[1] On March 10, 2010, a

jury returned guilty verdicts on count 1 (second degree murder), *id.* at 43 (Ex. J), with a firearm

enhancement, *id.* at 45 (Ex. L); alterative count 1 (first degree felony murder), *id.* at 44 (Ex. K);

count 2 (armed robbery), *id.* at 46 (Ex. M), with a firearm enhancement, *id.* at 47 (Ex. N); count

3 (child abuse), *id.* at 48 (Ex. O), with a firearm enhancement, *id.* at 49 (Ex. P); count 4

(tampering with evidence), *id.* at 50 (Ex. Q); and count 5 (resisting, evading, or obstructing an

officer), *id.* at 51 (Ex. R). On April 20, 2010, a state district court judge sentenced Mr. Power to

life for the felony murder count, a concurrent fifteen-year sentence for the second-degree murder

count with a one-year firearm enhancement, and a consecutive eighteen-year sentence for the

remaining counts, including another two-year firearm enhancement associated with the

intentional child abuse and armed robbery counts. *Id.* at 81-83 (Ex. T).

---

[1] For the state court records, I cite the Bates number rather than a document's original
pagination.

Mr. Power filed a direct appeal to the New Mexico Supreme Court. *Id.* at 84-85 (Ex. U). He raised five issues on appeal:[2] Mr. Power's sentence violated the prohibition against double jeopardy; Mr. Power's right to a fair trial was infringed by the fact that the judge who presided over trial and sentencing was also directly involved in plea negotiations; the prosecutor's misstatements of law deprived Mr. Power of a fair trial, including the statement that the jury could convict Mr. Power of both felony murder and second degree murder and the statement that jurors could place a higher value on agreement than on voting their own conscience; the state's burden of proof was diluted by comments suggesting it was lower than beyond a reasonable doubt; and the court should have suppressed highly-suggestive "show-up" testimony. Doc. 10-1 at 162-200 to Doc. 10-2 at 200-19 (Ex. Z). The New Mexico Supreme Court agreed with Mr. Power's double jeopardy argument and, accordingly, vacated his second degree murder and armed robbery convictions. Doc. 10-2 at 281-99 (Ex. CC); *see also id.* at 300-02 (Ex. DD) (amended judgment, sentence, and commitment). The New Mexico Supreme Court affirmed Mr. Power's remaining convictions. *Id.* at 284-85 (Ex. CC).

On February 27, 2013, Mr. Power filed a petition for writ of habeas corpus in the state district court. *Id.* at 303-27 (Ex. EE).[3] That petition raised six grounds for relief: violation of due process when the trial judge involved himself in plea negotiations and then presided over the trial

---

[2] In his initial Statement of Issues filed with the New Mexico Supreme Court, Mr. Power raised a total of eight issues. Doc. 10-1 at 89-95 (Ex. V). Because he only included five of those issues in his brief in chief, the New Mexico Supreme Court only considered those five. Doc. 10-2 at 281-99 (Ex. CC).

[3] At that time, Mr. Power was proceeding pro se and, as such, his petition is handwritten on light pages that are very difficult to read. *See* Doc. 10-2 at 303-27 (Ex. EE). However, a legible version is attached to the court's order appointing habeas counsel. *See* Doc. 10-3 at 333-57 (Ex. GG). Thus, when discussing Mr. Power's original habeas petition in the state district court, I will cite Exhibit GG, instead of Exhibit EE.

and sentencing; the district attorney and the court conspired to deprive Mr. Power of his constitutional rights; the introduction into evidence of the residential burglary charge violated Mr. Power's due process rights; the search of Mr. Power's car violated the Fourth Amendment; the arrest and search warrant violated the Fourth Amendment; and ineffective assistance of trial counsel for failing to introduce a statement by the lead detective, failing to make the state present chain of custody testimony regarding the fingerprints, failing to challenge the admission of a container, failing to challenge the illegal search of his vehicle, and failing to ensure Mr. Power was present at resentencing. Doc. 10-2 at 338-46 & Doc. 10-3 at 347-57 (Ex. GG). The court appointed Mr. Power an attorney, Doc. 10-2 at 331-32 (Ex. GG), Doc. 10-3 at 364 (Ex. II), and, at the direction of the court, counsel filed an amended habeas petition on February 11, 2014, Doc. 10-3 at 364-85 (Ex. JJ). The amended petition repeated the six claims raised in the original habeas petition and added two more: that, in violation of the Fourth Amendment, detectives used false statements to secure a search warrant and that Mr. Power was not present at pretrial conferences. Doc. 10-3 at 367-85 (Ex. JJ). At the direction of Mr. Power, his attorney then filed an addendum to the amended habeas petition adding the following claims: insufficient evidence because the autopsy report was not admitted into evidence; violation of the confrontation clause when the medical examiner failed to testify; ineffective assistance of counsel when trial counsel stipulated to the medical examiner testifying; and ineffective assistance of counsel when trial counsel failed to move for a directed verdict. *Id.* at 406-09 (Ex. NN).

Following conflicts between Mr. Power and his appointed counsel, *id.* at 389-90 (Ex. LL), 392-94 (Ex. MM), the court ordered a substitution of counsel on September 29, 2014, *id.* at 410-11 (Ex. OO). On August 6, 2015, Mr. Power's new counsel filed his pro se second amended petition for writ of habeas corpus, *id.* at 419-53 (Ex. QQ), and then moved to withdraw, *id.* at

454-56 (Ex. RR). The second amended petition raised thirteen grounds for relief: the trial judge involved himself in plea negotiations; the court and the attorneys conspired to deprive Mr. Power of his constitutional rights; the state introduced a burglary charge in violation of due process; the arrest warrant violated the Fourth Amendment; the search of his car violated the Fourth Amendment; the warrantless arrest violated the Fourth Amendment; false statements in the search warrant violated the Fourth Amendment; Mr. Power was not present at all proceedings; prosecutors committed a *Brady* violation by withholding evidence; a confrontation clause violation occurred because several witnesses involved in the investigation and handling of evidence did not testify at trial; there was insufficient evidence to convict; the court failed to rule on the sufficiency of evidence; and counsel provided ineffective assistance by failing to call the lead investigator to testify, failing to call Margaret Petry as a witness, failing to move for a directed verdict, failing to suppress the arrest warrant, failing to suppress the search warrant, failing to compel confrontation of several adverse witnesses, failing to have an independent assessment of the evidence, failing to ensure Mr. Power was present on multiple occasions, failing to challenge the warrantless arrest, failing to compel the state to provide complete discovery, allowing the court to attempt to coerce a plea off the record, failing to challenge the warrantless search of Mr. Power's car, failing to move to try to the burglary charge first, and failing to ensure Mr. Power had a record of all communications and proceedings. *Id.* at 424-53 (Ex. QQ). The court allowed counsel to withdraw, *id.* at 457 (Ex. SS), and appointed a third attorney for Mr. Power, *id.* at 458-59 (Ex. TT).

Mr. Power's third appointed counsel filed the operative third amended petition for a writ of habeas corpus on October 13, 2016. *Id.* at 460-78 (Ex. UU). That petition incorporated "[a]ll arguments and factual circumstances asserted by Petitioner Power in his petitions filed on

February 27, 2013, February 11, 2014, and August 15, 2015,"[4] i.e., the original, amended, and second amended petitions. *Id.* at 461. In addition, the third amended petition raised seven ineffective assistance of counsel claims: trial counsel failed to retain experts to verify or challenge critical identification evidence; trial counsel failed to conduct any independent testing of the DNA or fingerprint evidence; trial counsel failed to adequately impeach identification witnesses; trial counsel failed to present evidence in support of the motion to suppress "show-up" identifications; trial counsel failed to file a motion to suppress the warrantless search of Mr. Power's vehicle; trial counsel failed to challenge the admission of the firearm expert; and trial counsel failed to object to Dr. Zumwalt's testimony, which violated Mr. Power's confrontation rights. *Id.* at 469-77. After the state responded, *id.* at 483-504 (Ex. XX), the state district court denied the third amended habeas petition on August 28, 2017, expressly addressing only the seven ineffective assistance of counsel claims raised in the third amended petition (i.e., not the other claims in the prior petitions that the third amended petition incorporated), *id.* at 505-27 (Ex. YY). The state district court also denied Mr. Power's motion for rehearing. *Id.* at 526-52 (Ex. ZZ), 555-57 (Ex. BBB).

On April 23, 2018, Mr. Power filed a motion with the New Mexico Supreme Court, asking for an extension of time to file a petition for writ of certiorari regarding his habeas petition. *Id.* at 558-72 (Ex. CCC), 573-90 (Ex. DDD). The court granted this request, extending the time for Mr. Power to file a petition for writ of certiorari until May 23, 2018. *Id.* at 591 (Ex. EEE). Thereafter, Mr. Power filed a second request for an extension, explaining that he was waiting on copies of transcripts and DVDs from the trial court proceedings. *Id.* at 592-601 (Ex.

---

[4] I assume the August 15 date is a typographical error as Mr. Power filed his second amended petition on August 6, Doc. 10-3 at 419, and the docket sheet does not reflect any filings on August 15, 2015, *id.* at 813.

FFF), 602 (Ex. GGG), 603 (Ex. HHH). The New Mexico Supreme Court again granted this request, extending the deadline for Mr. Power to file a petition for writ of certiorari until September 10, 2018. *Id.* 604 (Ex. III). On that date, Mr. Power filed a third request for an extension, explaining that he had received the hearing transcripts but was still waiting for a copy of a discovery DVD. *Id.* at 605-12 (Ex. JJJ). The State, through the District Attorney, opposed the third extension request, arguing that the records indicated that Mr. Power already had possession of all discovery. *Id.* at 615-43 (Ex. LLL). The Supreme Court granted Mr. Power's extension, giving him one final extension until October 30, 2018 to file a petition for writ of certiorari. *Id.* at 644 (Ex. MMM).

Despite the warning that his third extension would be the last, Mr. Power filed a fourth request for an extension on November 2, 2018. *Id.* at 645-60 (Ex. NNN). While the court was waiting on a response from the State regarding the fourth extension request, *id.* at 661 (Ex. OOO), 662-64 (Ex. PPP), 665 (Ex. QQQ), Mr. Power filed another request for an extension, *id.* at 666-84 (Ex. RRR). The Attorney General responded in opposition to these requests. *Id.* at 685-722 (Ex. SSS). Before the court ruled, Mr. Power filed a "Final Request for Extension of Time to File Petition," explaining that he needed additional time to review a disc received from the District Attorney's Office. *Id.* at 723-27 (Ex. TTT). Ultimately, on January 9, 2019, the court denied Mr. Power's extension requests. *Id.* at 728 (Ex. UUU). Mr. Power filed a motion for reconsideration, *id.* at 799-806 (Ex. WWW), which the court denied, *id.* at 807 (Ex. XXX). Thus, Mr. Power never filed a petition for writ of certiorari to the New Mexico Supreme Court regarding his state habeas petition.

On November 12, 2019, Mr. Power filed, in this Court, a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus raising six claims and many subclaims: (1) the trial judge

involved himself in plea negotiations and then presided over trial and sentencing; (2) the judge, prosecutor, and defense attorney conspired to deprive Mr. Power of his rights; (3) admission of the aggravated-burglary evidence violated Mr. Power's 8th and 14th Amendment rights; (4) *Brady* violations; (5) ineffective assistance of trial counsel; and (6) ineffective assistance of appellate counsel on direct appeal. Doc. 1. After reviewing the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the Court ordered the Attorney General to answer the petition. Doc. 5. The Attorney General filed an answer on September 19, 2022, Doc. 10, and Mr. Power filed a reply thereafter, Doc. 11.

## EXHAUSTION & PROCEDURAL DEFAULT

Before addressing the merits of Mr. Power's petition, I address the issue of exhaustion and procedural default.

### 1. <u>Legal Standard</u>

Under 28 U.S.C. § 2254(b)(1)(A), a petition for writ of habeas corpus generally cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that a claim be pursued "through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011).[5] "The exhaustion requirement is

---

[5] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

The federal habeas court will generally not entertain unexhausted claims unless exhaustion would have been futile because "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). "The state prisoner bears the burden of proving that he exhausted state court remedies, or that exhaustion would have been futile." *Selsor*, 644 F.3d at 1026 (internal citation omitted).

"Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891–92 (10th Cir. 2018) (internal quotation marks and citation omitted). That rule, however, is not absolute and a district court faced with a petition containing both exhausted and unexhausted claims—i.e., a mixed petition—can

> "(1) dismiss the entire petition without prejudice in order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits." *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002). The court may also permit the petitioner to delete the unexhausted claim from his petition and proceed only on the exhausted claims, *Rose v. Lundy*, 455 U.S. 509, 510 (1982), or, if the equities favor such an approach, it may stay the federal habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust the previously unexhausted claims, *Rhines v. Weber*, 544 U.S. 269, 279 (2005).

*Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016).

An important corollary to exhaustion is procedural default, in which courts "may not consider claims that have been defaulted in state court on adequate and independent state procedural grounds . . . unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice." *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (internal quotation marks and citation omitted). Said another way, "[t]he doctrine of procedural default prevents a federal court from reviewing the merits of a claim—including constitutional claims—that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015) (internal quotation marks and citation omitted). "A state procedural default is independent if it relies on state law, rather than federal law, and is adequate if it is firmly established and regularly followed." *Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022) (internal quotation marks and citation omitted). Procedurally defaulted claims are "technically exhausted," but "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

"Together, exhaustion and procedural default promote federal-state comity by affording States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and by protecting against the significant harm to the States that results from the failure of federal courts to respect state procedural rules." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1724 (2022) (internal quotation marks and citations omitted).

**2. <u>Analysis</u>**

To begin, I consider which category Mr. Power's claims fall into: exhausted, including claims that are procedurally defaulted, or unexhausted. Because Mr. Power has presented numerous claims at different stages of his direct appeal and post-conviction relief, below is a table summarizing all claims presented at each stage.

| Claims in Present § 2254 Petition | Claims on Direct Appeal | Claims in State District Court Habeas Petition |
|---|---|---|
| 1. Trial judge involved himself in plea negotiations and then presided over trial and sentencing (Doc. 1 at 11-12) | Mr. Power's right to a fair trial was infringed by the fact that the judge who presided over trial and sentencing was also directly involved in plea negotiations (Doc. 10-1 at 193-200 to 10-2 at 200-01; Doc. 10-2 at 285-89) | Violation of due process when trial judge involved himself in plea negotiations then presided over the trial and sentencing (Doc. 10-2 at 342-43; Doc. 10-3 at 371-72; Doc. 10-3 at 429-30) |
| 2. The judge, prosecutor, and defense attorney conspired to deprive Mr. Power of his rights (Doc. 1 at 12-13) | | District attorney and the court conspired to deprive Mr. Power of his constitutional rights (Doc. 10-3 at 343-44; Doc. 10-3 at 372-73) and defense counsel also participated in the conspiracy (Doc. 10-3 at 430-32) |
| 3. Procedural due process: admission of the aggravated-burglary evidence violated Mr. Power's 8th and 14th Amendment rights (Doc. 1 at 13-16) | | Introduction of the residential burglary charge violated due process (Doc. 10-3 at 344-46; Doc. 10-3 at 374-77; Doc. 10-3 at 432-35) |
| 4(a). *Brady* violation: the prosecutor concealed a DNA swab taken from the murder weapon (Doc. 1 at 16-17) | | *Brady* violation: the prosecutors deprived Mr. Power of the DNA swab evidence taken from the murder weapon (Doc. 10-3 at 448) |
| 4(b). *Brady* violation: the prosecutor withheld 35 police reports (Doc. 1 at 18-19) | | *Brady* violation: the prosecutors withheld supplemental police reports (Doc. 10-3 at 448-49) |
| 5(a). Ineffective assistance of counsel: trial counsel failed to suppress the search warrant of the car (Doc. 1 at 19-20) | | Ineffective assistance of counsel: trial counsel failed to file a motion to suppress the illegal search of Mr. Power's vehicle (Doc. 10-3 at 349; Doc 10-3 at 378-79; Doc. 10-3 at 474; Doc. 10-3 at 437) |
| 5(b). Ineffective assistance of counsel: trial counsel failed to suppress arrest warrant (no probable cause) (Doc. 1 at 20-22) | | Ineffective assistance of counsel: trial counsel failed to suppress the arrest warrant (Doc. 10-3 at 436-37) |
| 5(c). Ineffective assistance of counsel: trial counsel failed to | | Ineffective assistance of counsel: trial counsel failed to compel the |

| | | |
|---|---|---|
| compel the state to provide complete discovery (Doc. 1 at 22-23) | | state to provide complete discovery (Doc. 10-3 at 438) |
| 5(d). Ineffective assistance of counsel: trial counsel allowed the court to attempt to coerce a plea off the record (Doc. 1 at 23-24) | | Ineffective assistance of counsel: trial counsel allowed the court to attempt to coerce a plea off the record (Doc. 10-3 at 438-39) |
| 5(e). Ineffective assistance of counsel: trial counsel failed to move to try the burglary charge before the murder charge (Doc. 1 at 23-25) | | Ineffective assistance of counsel: trial counsel failed to move to try the burglary change before the murder charge (Doc. 10-3 at 439) |
| 5(f). Ineffective assistance of counsel: trial counsel failed to ensure that Mr. Power had a record of all communications and proceedings before the court (Doc. 1 at 25) | | Ineffective assistance of counsel: trial counsel failed to sure that Mr. Power had a record of all communications and proceedings (Doc. 10-3 at 439-40) |
| 5(g). Ineffective assistance of counsel: trial counsel failed to challenge Mr. Power's warrantless arrest (Doc. 1 at 25-26) | | Ineffective assistance of counsel: trial counsel failed to challenge Mr. Power's warrantless arrest (Doc. 10-3 at 438) |
| 5(h). Ineffective assistance of counsel: trial counsel failed to present statements to the jury from Detective Broderick (Doc. 1 at 26) | | Ineffective assistance of counsel: trial counsel failed to introduce statement by lead detective (Doc. 10-3 at 348; Doc. 10-3 at 377; Doc. 10-3 at 436) |
| 5(i). Ineffective assistance of counsel: trial counsel failed to call Margaret Petrey as a witness (Doc. 1 at 27) | | Ineffective assistance of counsel: trial counsel failed to call Margaret Petrey as a witness (Doc. 10-3 at 436) |
| 5(j). Ineffective assistance of counsel: trial counsel failed to compel confrontation of several adverse witnesses (Doc. 1 at 27-29) | | Ineffective assistance of counsel: trial counsel failed to adequately impeach identification witnesses (Doc. 10-3 at 472-73); trial counsel violated the confrontation clause by stipulating to testimony of the medical examiner (Doc. 10-3 at 409; Doc. 10-3 at 476-77); trial counsel failed to compel confrontation of several adverse witnesses (Doc. 10-3 at 437) |
| 5(k). Ineffective assistance of counsel: trial counsel failed to | | Ineffective assistance of counsel: trial counsel failed to retain |

| | | |
|---|---|---|
| conduct an independent assessment of the ballistics and DNA evidence (Doc. 1 at 29-31) | | experts to verify or challenge critical identification evidence (ballistics, DNA, and fingerprint) (Doc. 10-3 at 469-72; Doc. 10-3 at 437-38) |
| 5(l). Ineffective assistance of counsel: trial counsel failed to ensure Mr. Power's 6th Amendment right to be present (Doc. 1 at 32-34) | | Ineffective assistance of counsel: trial counsel failed to ensure Mr. Power's presence at resentencing (Doc. 10-3 at 349; Doc. 10-3 at 378-79), and at pretrial conferences (Doc. 10-3 at 379; Doc. 10-3 at 438) |
| 5(m). Ineffective assistance of counsel: trial counsel's cumulative error resulted in an unfair trial (Doc. 1 at 34) | | Ineffective assistance of counsel: trial counsel's cumulative error resulted in an unfair trial (Doc. 10-3 at 477) |
| 6(a). Ineffective assistance of counsel: appellate counsel (for direct appeal) failed to argue that the jury was improperly instructed (Doc. 1 at 6, 10) | | |
| 6(b). Ineffective assistance of counsel: appellate counsel (for direct appeal) failed to raise an issue that the jury verdict was not unanimous (Doc. 1 at 6, 10) | | |
| | Mr. Power's sentence violates the prohibition against double jeopardy (Doc. 10-1 at 184-93) | |
| | The prosecutor's misstatements of law deprived Mr. Power of a fair trial (Doc. 10-2 at 201-09) | |
| | The state's burden of proof was diluted by comments suggesting it was lower than beyond a reasonable doubt (Doc. 10-2 at 210-13) | |
| | The court should have suppressed highly-suggestive "show-up" | |

| | | |
|---|---|---|
| | testimony (Doc. 10-2 at 213-16) | |
| | | Ineffective assistance of counsel: trial counsel failed to present evidence in support of the motion to suppress "show-up" identifications (Doc. 10-3 at 473) |
| | | Ineffective assistance of counsel: trial counsel failed to challenge the admission of the firearm expert (Doc. 10-3 at 475) |
| | | Ineffective assistance of counsel: trial counsel failed to make the State present chain of custody testimony regarding fingerprints (Doc. 10-3 at 348; Doc. 10-3 at 377) |
| | | Ineffective assistance of counsel: trial counsel failed to challenge the admission of the container (Doc. 10-3 a 348; Doc. 10-3 at 378) |
| | | Ineffective assistance of counsel: trial counsel failed to move for a directed verdict after autopsy report was not introduced (Doc. 10-3 at 409; Doc. 10-3 at 436) |
| | | Ineffective assistance of counsel: trial counsel failed to challenge the warrantless search of Mr. Power's car (Doc. 10-3 at 439) |
| | | Ineffective assistance of counsel: trial counsel failed to conduct capital murder trial with the skill necessary (Doc. 10-3 at 439) |
| | | Search of Mr. Power's car violated the Fourth Amendment (Doc. 10-3 at 346-48; Doc. 10-3 at 379-81, 382-84; Doc. 10-3 at 442-43) |
| | | Arrest and search warrant violated the Fourth Amendment (Doc. 103- at 349-50; Doc. 10-3 at 381-82; Doc. 10-3 at 440-42, 444-45) |

| | | Warrantless arrest violated the Fourth Amendment (Doc. 10-3 at 443-44) |
| --- | --- | --- |
| | | Mr. Power was not present at several pretrial conferences in violation of the Sixth Amendment (Doc. 10-3 at 384-85; Doc. 10-3 at 445-47) |
| | | Insufficient evidence because the autopsy report was not admitted into evidence (Doc. 10-3 at 407; Doc. 10-3 at 451-52) |
| | | The court failed to rule on the sufficiency of the evidence (Doc. 10-3 at 452) |
| | | Violation of confrontation clause when the medical examiner failed to testify (Doc. 10-3 at 408) and when the state concealed adverse witnesses (Doc. 10-3 at 449-51) |

Those claims Mr. Power presented only to the state district court in a habeas petition (claims 2-5), and failed to appeal to the New Mexico Supreme Court, are unexhausted because exhaustion requires each claim to be "properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack."[6] *Dever*, 36 at 1534. Mr. Power, who bears the burden, makes no argument that exhaustion of those claims would be futile because of an absence of an available state corrective process or because circumstances exist that render such process ineffective to protect the rights of the applicant.[7] *See* 28 U.S.C. §

---

[6] Mr. Power argues that the state district court failed to address all the issues raised in his various habeas petitions. Doc. 1 at 2, 35. Even so, Mr. Power failed to appeal any issue to the New Mexico Supreme Court and so failed to exhaust any of those issues.

[7] In his reply, Mr. Power does argue that he was unable to file a petition for writ of certiorari with the New Mexico Supreme Court regarding his state habeas claims because he was waiting for further records. Doc. 11 at 1-2. However, he offers this argument as grounds to excuse procedural default (which I discuss below), not to assert that exhaustion would have been futile.

2254(b)(1)(B). Likewise, those claims that Mr. Power failed to present to the state court on direct appeal or in a habeas petition—claims 6(a) and (b)—are also unexhausted. Thus, the only exhausted claim in Mr. Power's § 2254 petition is the one he also presented to the state supreme court on direct appeal: that the trial judge involved himself in plea negotiations and then presided over trial and sentencing (claim 1). As to the unexhausted claims, I will next examine whether any are procedurally defaulted, and therefore technically exhausted.

### a. Procedurally Defaulted Claims

To analyze procedural default, I will divide the claims into two groups: (1) claims 2-5 (including all subparts) which Mr. Power raised in the district court in his habeas petition but failed to appeal; and (2) claim 6 (including subparts) which Mr. Power failed to raise in any direct appeal or post-conviction petition with the state.

### i.  Claims 2-5 (including subparts)

The State argues that because Mr. Power did not present his post-conviction claims to the New Mexico Supreme Court within the time allowed, the unexhausted habeas claims are procedurally defaulted. Doc. 10 at 16. "A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures. When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is procedurally defaulted." *Shinn*, 142 S. Ct. at 1727–28; *see also Magar v. Parker*, 490 F.3d 816, 819 (10th Cir. 2007) ("The Supreme Court has explained that if state court remedies are no longer available because the prisoner failed to comply with the

_____

*See id.* at 1 ("Mr. Power demonstrates cause and prejudice to exclude the default, that a fundamental miscarriage of justice will occur absent consideration of the defaulted claims. . . .").

deadline for seeking review, the prisoner's procedural default functions as a bar to federal habeas review.").

Here, under New Mexico Rule 5-802(N), a petitioner has 30 days after the district court's decision denying the habeas petition to petition for certiorari with the New Mexico Supreme Court. NMRA 5-802(N); *see also* NMRA 12-501(B) ("Petitions for writs of certiorari shall be filed with the Supreme Court clerk within thirty (30) days of entry of the district court's order denying the petition [for habeas corpus]."). Mr. Power did not file a petition for writ of certiorari in that time, but instead filed multiple requests to extend the time to file a petition with the Supreme Court. The Supreme Court granted three extensions, warning Mr. Power that the third extension would be his last. *See* Doc. 10-3 at 644 (Ex. MMM); *see also* NMRA 12-501(C) (allowing the Supreme Court to extend the time to file a petition in certain circumstances). When Mr. Power did not file his petition for writ of certiorari, but filed additional requests for extension, the court denied his requests for further extensions. Doc. 10-3 at 728 (Ex. UUU), 807 (Ex. XXX).

Thus, Mr. Power failed to file a petition for writ of certiorari within the deadline to do so such that the New Mexico Supreme Court declined to hear his claims. I therefore agree with the State that Mr. Power's claims in the state habeas petition are procedurally defaulted. He missed the filing deadline and so is barred from appealing them to the New Mexico Supreme Court. That is, because Mr. Power could have, but did not, raise those claims with the New Mexico Supreme Court, he is barred from raising them with the New Mexico Supreme Court now. *See Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) ("[I]f a petitioner 'failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the

claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.").

Indeed, the Tenth Circuit has specifically held that, in a habeas proceeding originating in a New Mexico state district court, failure to timely seek state supreme court review renders those habeas claims procedurally defaulted for purposes of federal habeas review. *Watson v. State of N.M.*, 45 F.3d 385, 387 (10th Cir. 1995); *see also Ortega v. Williams*, 3 F. App'x 722, 724 (10th Cir. 2001) (same). In *Ogden v. Bravo*, the Tenth Circuit explained that "New Mexico state law provides a firm certiorari deadline in habeas cases: 'Petitions for writs of certiorari shall be filed with the supreme court clerk within thirty (30) days of the district court's denial of the petition.'" 35 F. App'x 722, 726 (10th Cir. 2002) (quoting NMRA 12-501(B)). The failure to meet this deadline means "issues first raised in [a] state habeas petition were never addressed by the [New Mexico Supreme Court] and are now procedurally defaulted for purposes of federal habeas review." *Id.* I thus recommend finding that the claims Mr. Power failed to appeal in his state habeas petition (claims 2-5) are defaulted on adequate and independent state procedural grounds and are thus procedurally barred.

Procedural default, however, may be excused on two grounds, and so I will next examine whether either applies in this case. The first ground has two subparts: "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022).

> To establish cause, the prisoner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that the errors at . . . trial created a *possibility* of prejudice, but rather that the constitutional violation worked to his *actual* and substantial disadvantage.

*Id.* at 1733 (internal quotation marks and citations omitted). In this context, prejudice does not mean the prejudice arising from the external error that caused the default, but "prejudice arising from the errors that form the basis of [petitioner's] *substantive* claims." *Smith v. Allbaugh*, 921 F.3d 1261, 1271 (10th Cir. 2019) (emphasis in original).

Here, to establish cause, Mr. Power argues that he was unable to file a petition for writ of certiorari by the New Mexico Supreme Court's deadline because he was waiting to receive copies of two discs containing discovery that he had filed with the state district court with his motion for rehearing. Doc. 11 at 2. He asserts that he "did not just elect to not file a writ of certiorari. [He] diligently attempted to provide a complete record to the state's highest court." *Id.*; *see also* Doc. 1 at 10 ("All of Mr. Power's claims herein were unable to be properly exhausted due to an unconscionable breakdown in the process occurring."). The New Mexico Supreme Court, however, already rejected this argument. When requesting extensions of time to file his petition with the New Mexico Supreme Court, Mr. Power repeated that same argument. *See* Doc. 10-3 at 560-61 (Ex. CCC), 574-75 (Ex. DDD), 593 (Ex. FFF), 602 (Ex. GGG), 603 (Ex. HHH), 606 (Ex. JJJ), 646-48 (Ex. NNN), 667 (Ex. RRR), 724 (Ex. TTT). After granting three extensions based on this argument, *id.* at 591 (Ex. EEE), 604 (Ex. III), 644 (Ex. MMM), the Supreme Court directed the Office of the Attorney General to file a response to Mr. Power's extension request, *id.* at 661 (Ex. OOO). In its response, the Office of the Attorney General pointed out that Mr. Power had not demonstrated the nature of or need for the DVDs in order to complete his petition for writ of certiorari. *Id.* at 693 (Ex. SSS). It also argued that Mr. Power

was already provided all available discovery. *Id.* at 694-95. The New Mexico Supreme Court

thereafter denied Mr. Power any further extensions. *Id.* at 728 (Ex. UUU).

In the present briefing, Mr. Power likewise fails to explain why he needed the discs in

order to file his petition for writ of certiorari. That is, NMRA 12-501(D)(2) only requires that

petitions for writ of certiorari contain "a direct and concise argument showing that the district

court's decision was erroneous," and only if the writ is granted will the court order "additional

briefs, the record, and transcripts," NMRA 12-501(E). Other than a conclusory statement that he

needed documents "to present a valid *Brady* constitutional violation to the court," Doc. 11 at 2,

Mr. Power does not explain why he needed the discs in order to make a direct and concise

argument showing that the district court's decision was erroneous. Given this, and given that the

New Mexico Supreme Court already rejected the arguments he now presents, I recommend

finding Mr. Power has not shown cause to excuse the procedural default. Additionally, Mr.

Power makes no argument in the present briefing regarding prejudice or that the alleged errors at

trial "worked to his actual and substantial disadvantage." *Shinn*, 142 S. Ct. at 1733.

The second ground to excuse procedural default is that failure to consider the claims will

result in a fundamental miscarriage of justice. "[A] credible showing of actual innocence may

allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the

existence of a procedural bar to relief. This rule, or fundamental miscarriage of justice exception,

is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors

do not result in the incarceration of innocent persons." *Fontenot v. Crow*, 4 F.4th 982, 1029 (10th

Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022) (cleaned up). Here, Mr. Power does not make

any arguments regarding actual innocence or any other fundamental miscarriage of justice and so

I recommend finding that he has failed to demonstrate grounds to excuse the procedural default.

20

For these reasons, I recommend finding that claims 2-5 (including all subparts) of Mr. Power's § 2554 petition are procedurally defaulted.

     ii. <u>Claim 6 (including subparts)</u>

Lastly, I examine whether the subparts of claim 6 are procedurally defaulted. The State does not specifically address these claims. Rather than addressing claims like these that Mr. Power never presented to a state court, in addressing procedural default, the State focuses on claims Mr. Power included in his state habeas petition, but did not then include in an appeal (i.e., claims 2-5). *See generally*, Doc. 10 at 11-16. The State does summarily mention that anticipatory procedural bar would apply should Mr. Power file a second habeas petition in state court. Doc. 10 at 16 n.6. To the extent that the State is arguing claim 6 is procedurally defaulted, I disagree.

Anticipatory procedural bar "occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (internal quotation marks and citation omitted). Under New Mexico Rule 5-802 for second and successive petitions,

> If the petitioner has previously filed a petition seeking relief under this rule, the court *shall have the discretion* to:
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
> (2) dismiss any claim raised and rejected in a prior petition unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim.

NMRA 5-802(I) (emphasis added). And, New Mexico has no statute of limitations for a habeas petition challenging a conviction or sentence for which the petitioner is currently confined. *See generally* NMRA 5-802; *State v. Sutphin*, 2007-NMSC-045, ¶ 12, 164 P.3d 72 ("New Mexico does not impose a statute of limitations on habeas petitioners.").

21

Thus, even though Mr. Power has already filed a habeas petition in state court without including either subpart of claim 6, if he now returned to state court and filed a new habeas petition, it would not automatically be barred under state law. Instead, the state court would have the discretion to allow, or not allow, that second petition to proceed. Not knowing how the state court might exercise its discretion, I cannot conclude that, if Mr. Power returned to state court with claim 6, this claim would be barred. *See Fontenot*, 4 F.4th at 1027 ("To apply an anticipatory procedural bar, absolute certainty is not required regarding how another court will resolve an unexhausted claim under its own procedural rules. Rather, it is enough if, looking to the state's treatment of its procedural bar, the likelihood of default *in the petitioner's case* is beyond debate or dispute.") (internal quotation marks and citations omitted) (emphasis in original). I therefore recommend finding that claim 6 is not procedurally barred.

### b. Mixed Petition

In sum, I recommend finding that the Court is left with a mixed petition: claim 1 is exhausted, claims 2-5 are procedurally defaulted (and thus effectively exhausted), and claim 6 is unexhausted. Mixed petitions can be dealt with in four ways:

> (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citations omitted).

Mr. Power suggests options two—stay the present petition and hold it in abeyance while he presents the unexhausted claim to the state court. Doc. 1 at 10-11. However, "stay and abeyance should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). "Because granting a stay effectively excuses a petitioner's failure to present his claims

first to the state courts stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* Here, Mr. Power argues that the state habeas court prevented him from appearing pro se and his appointed counsel refused to add the claim 6 issues to his state habeas petition. Doc. 1 at 10. However, Mr. Power filed two habeas petitions with the state court that he authored. *See* Doc. 10-2 at 303-27 (Ex. EE); Doc. 10-3 at 419-53 (Ex. QQ). Additionally, his counsel filed an addendum to one version of the state habeas petition that Mr. Power wrote himself. Doc. 10-3 at 406-09 (Ex. NN). His operative third amended habeas petition (authored by counsel) incorporated all arguments presented in the version that Mr. Power drafted. Thus, even if his counsel refused to include the ineffective-assistance-of-appellate-counsel claims in the third amended habeas petition, Mr. Power had multiple opportunities to include those claims in versions of the petition that he drafted. As such, I recommend finding that Mr. Power has not shown good cause for his failure to exhaust claim 6 in state court. If the Court accepts this recommendation, it should reject Mr. Power's request for a stay and abeyance.

Moreover, even if the Court concluded that Mr. Power's had good cause for not presenting claim 6 to the state courts, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines v. Weber*, 544 U.S. at 277. As discussed below, I find that claim 6 is meritless and easily resolvable against Mr. Power.

Because Mr. Power has not shown good cause for his failure to exhaust claim 6 and because claim 6 is meritless, I recommend that the Court proceed under option four for mixed petitions—ignore the exhaustion requirement altogether and deny the petition on the merits because none of the petitioner's claims have any merit. *See* 28 U.S.C. § 2254(b)(2) ("An

application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Rudolph v. Galetka*, 208 F.3d 227, at *1 (10th Cir. 2000) (table decision) ("[W]here the district court is convinced the unexhausted claim is without merit, or that the issue is easily resolvable against the [petitioner], the court may reach the merits of the claim rather than dismiss the petition.").

## MERITS ANALYSIS

### 1. <u>Legal Standard</u>

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Such review must be "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. . . . [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

24

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations and internal quotation marks omitted). "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

A § 2254(d)(1) analysis requires two steps: "First, as a 'threshold matter,' we must determine 'what constitutes clearly established Federal law, as determined by the Supreme Court of the United States.'" *Andrew v. White*, 62 F.4th 1299, 1310–11 (10th Cir. 2023) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). "In step two, we consider whether the state court decision was contrary to or an unreasonable application of that clearly established federal law." *Id.* at 1311 (internal quotation marks and citation omitted). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one."). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

*Harrington*, 562 U.S. at 101. The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98; *see also Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

When determining whether a state decision was based on an unreasonable determination of facts in light of the evidence presented, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

2.  **Analysis**

As discussed above, I recommend finding that claims 2-5 are procedurally defaulted. Thus, I will proceed to address the merits of the exhausted claim—claim 1—and the unexhausted claim that is easily resolvable against Mr. Power—claim 6.

a.  **Claim 1**

Mr. Power's first claim for relief is that the trial judge involved himself in plea negotiations and then presided over trial and sentencing. Doc. 1 at 11-13. He asserts that "Judge Murdoch, in chambers and off record, demanded and repeatedly encouraged Mr. Power to accept

a (16) year plea deal," and "informed Mr. Power that if convicted at trial, he would 'throw the book at him' and sentence him to everyday possible." Doc. 1 at 11. Such participation, he argues, "risks the loss of a judge's impartiality during trial." *Id.*

Mr. Power attached to his petition affidavits from his trial counsel, Michael Rosenfield and Amanda Stephenson, that provide more details. Doc. 1 at 38-41. Ms. Stephenson recites that on February 17, 2010, she attended a meeting in Judge Murdoch's jury deliberation room with the judge, Mr. Rosenfield, the prosecutor, and Mr. Power. *Id.* at 40 ¶ 2. The purpose of the meeting, she explains, was to review last minute details prior to the start of trial. *Id.* ¶ 4. During the meeting, Judge Murdoch "reviewed the charges and the sentence they carried and also notified Mr. Power of the plea agreement proposed by the State," but "Mr. Power indicated he would not be accepting an offer from the State." *Id.* at 38-39 ¶¶ 4-5. Mr. Rosenfield, in his affidavit, describes a meeting that took place on March 1, 2010 in the jury deliberation room between himself, Judge Murdoch, Ms. Stephenson, the prosecutor, and Mr. Power. *Id.* at 38 ¶ 2. During that meeting, Judge Murdoch explained to Mr. Power the possible consequences of going to trial as opposed to accepting the plea deal. *Id.* ¶ 4. Judge Murdoch told Mr. Power that "if he was convicted of first degree murder, he was facing a mandatory life sentence, and [the judge] had authority to give Mr. Power additional years if he was also convicted of the other charges which would be tried by the jury," and that Judge Murdoch "could not say if he would give [Mr. Power] additional time but that was certainly a possibility since he would be presiding at the trial and would hear all the evidence." *Id.* at 39 ¶¶ 6-7. Judge Murdoch "encouraged Mr. Power to accept the plea offer that the State was offering because it would be for a definite period of time less than the life sentence he was facing and because the State had a substantial case against him

based on the pretrial pleadings and testimony he heard at the hearing on the pre-trial motions," but Mr. Power refused to accept the plea. *Id.* ¶¶ 8-9.

Mr. Power raised this issue on direct appeal to the New Mexico Supreme Court, arguing that the judge's involvement in plea negotiations "implicates a fundamental unfairness within the system." Doc. 10-1 at 194; *see also* Doc. 10-1 at 92 (Ex. V) (statement of issues); *id.* at 175-76, 194-201 (Ex. Z) (opening brief on appeal). He alleged the same facts as in his present habeas petition: "Prior to trial, District Judge Albert S. 'Pat' Murdoch convened the parties to discuss the State's plea offer"; "the judge directly spoke with Mr. Power about this plea, expressly advising him that if he accepted the State's plea offer, there would be a 16-year cap at sentencing"; "[the judge] contrasted this [plea offer] with the circumstances at sentencing if Mr. Power chose to go to trial. At sentencing, the judge will have heard all of the trial testimony and will sentence him accordingly, without a 16-year cap"; and "Mr. Power rejected the plea offer." Doc. 10-1 at 175-76.

The New Mexico Supreme Court rejected Mr. Power's argument, finding that his failure to cite portions of the record in support of his appeal was fatal to his argument. Doc. 10-2 at 286-87 (Ex. CC). And, as an alternative basis for rejecting Mr. Power's argument, the New Mexico Supreme Court concluded that even "[i]f [Mr. Power's] claims that the district court judge's involvement were documented in the record as alleged . . . we still would not find that the comments alleged rise to the level of fundamental error." Doc. 10-2 at 287-88.

> Assuming an evidentiary hearing would find that [Mr. Power's] allegations about the district court judge's statements were true, such comments would not rise to the level of pervasive involvement in the plea negotiations. The district court judge did not lobby for the proposal or adoption of a particular plea agreement or invasively involve himself in the plea process. Rather, all that is alleged is that the district court judge pointed out that the jail time [Mr. Power] could face if he were convicted was longer than the sentence offered under the State's plea deal.

> Therefore, we conclude that the district court judge did not commit fundamental error.

Doc. 10-2 at 288-89.

In his present petition, Mr. Power argues that the district court judge violated Federal Rule of Criminal Procedure 11(e)(1)[8] and the New Mexico Judicial Ethics Handbook. Doc. 1 at 11. As an initial matter, the New Mexico state district court would not be bound by the *federal* rules of criminal procedure. *See* Fed. R. Cr. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States."); *Miles v. Dorsey*, 61 F.3d 1459, 1466–67 (10th Cir. 1995) ("While the cases Petitioner cite leave little doubt that federal judges should not participate in plea discussions, Rule 11 only sets the standard for federal courts; it does not necessarily establish a constitutional prohibition applicable in state courts.") (cleaned up). The New Mexico state law counterpart is Rule 5-304(A)(1), which provides that "[a] judge who presides over any phase of a criminal proceeding shall not participate in plea discussions." In any event, an analysis under § 2254(d)(1)—regarding whether a state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law—first requires the court to "determine what constitutes clearly established Federal law, as determined by the Supreme Court of the United States." *Andrew*, 62 F.4th at 1310–11 (internal quotation marks and citation omitted). This habeas court, thus, must look to federal law as defined by the United States Supreme Court, not New Mexico state court rules and handbooks.

---

[8] Prior to 2002, the provision that "[t]he court shall not participate in any discussion between the parties concerning any such plea agreement" was contained in Rule 11(e)(1). Fed. R. Cr. P. 11(e)(1) (2001). Presently, there is no Rule 11(e)(1) and the related section appears in Rule 11(c)(1). *See* Fed. R. Cr. P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions.").

To that end, Mr. Power also alleges he was denied due process and a fundamentally fair trial given the risk of impartiality after the judge participated in the plea negotiations. Doc. 1 at 11-12. The "floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citations omitted). Unless a judge's participation in plea negotiations somehow undermines the fairness of the entire criminal proceeding, however, the judge's participation does not violate any provision in the United States Constitution or otherwise amount to a structural error. As the Supreme Court has held, the rule against judges participating in plea negotiations "was adopted as a prophylactic measure, not one impelled by the Due Process Clause or any other constitutional requirement. Thus, violation of the Rule does not belong in the highly exceptional category of structural errors—*e.g.,* denial of counsel of choice or denial of a public trial—that trigger automatic reversal because they undermine the fairness of the entire criminal proceeding." *United States v. Davila*, 569 U.S. 597, 598–99 (2013). "Instead, in assessing Rule 11 errors [regarding a judge involved in plea negotiations], a reviewing court must take account of all that transpired in the trial court." Id.

In his present petition, Mr. Power's allegations against Judge Murdoch are essentially that the judge informed Mr. Power of the jail time he could face if convicted and of the difference in that jail time compared to the plea offer. The New Mexico Supreme Court held that such comments did not create a fundamental unfairness because Judge Murdoch did not "lobby for the proposal or adoption of a particular plea agreement." Doc. 10-2 at 288-89. And in the present petition, Mr. Power presents no argument or other information to show that this decision was contrary to or an unreasonable application of clearly established federal law or that it was

based on an unreasonable determination of facts in light of the evidence presented. As such, I recommend denying relief on this ground.

### b. Claim 6

After listing and describing all other claims for relief, Mr. Power summarily states that his appellate counsel on direct appeal provided ineffective assistance of counsel by failing to argue that the jury was improperly instructed and by failing to raise an issue that the jury verdict was not unanimous. Doc. 1 at 6, 10.

It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). In order to establish an ineffective assistance claim, a movant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88. Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington*, 562 U.S. at 105). Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

Here, Mr. Power presents no further argument or information to meet his burden on these ineffective assistance of counsel claims. He does not explain how his appellate counsel's representative fell below an objective standard of reasonableness. Indeed, as to the first claim, he provides no more specific information as to what jury instruction he believes counsel should have challenged. *See* Doc. 1 at 6 (stating only that counsel did not raise on direct appeal "any issues relating to the jury instructions that are not to be used when the charge of felony murder is submitted"). As to the second claim, the record indicates that the jury reached a unanimous decision on the verdict. *See* Doc. 10-1 at 43 (Ex. J), 44 (Ex. K), 45 (Ex. L), 46 (Ex. M), 47 (Ex. N), 48 (Ex. O), 49 (Ex. P), 50 (Ex. Q), 51 (Ex. R) (verdict forms); *id.* at 61 (Ex. P) (jury instruction that "[y]our verdict must be unanimous"). And Mr. Power offers no other information to explain why he believes the verdict was not unanimous or how his appellate counsel's representation fell below an objective standard of reasonableness for not raising this issue on direct appeal. Lastly, Mr. Power makes no showing of prejudice. For these reasons, I recommend finding that the ineffective assistance of counsel claims are meritless and easily resolvable against Mr. Power.

### 3. Evidentiary Hearing

Mr. Power requests an evidentiary hearing on his claims, arguing that a hearing is necessary as he did not receive one in state court.[9] Doc. 1 at 35; Doc. 11 at 4. It is not clear which claims he requests a hearing on; his motion generally requests an evidentiary hearing but his reply specifically discusses a hearing as to claim 1 (judge involved in plea negotiations). *See* Doc. 1 at 35-36; Doc. 11 at 4. To the extent he is requesting a hearing on the procedurally

---

[9] Mr. Power titled this section of his petition "Request for Hearing and Discovery," Doc. 1 at 35, but no makes no further mention of a request for discovery and so I will not address discovery.

defaulted claims, I recommend rejecting that request because this Court cannot review those

claims. *See Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015).

Likewise, to the extent Mr. Power is requesting an evidentiary hearing on claim 6, I also

recommend rejecting that request. 28 U.S.C. § 2254(e)(2) provides that

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that--
> **(A)** the claim relies on--
> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review
> by the Supreme Court, that was previously unavailable; or
> **(ii)** a factual predicate that could not have been previously discovered through the
> exercise of due diligence; and
> **(B)** the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder
> would have found the applicant guilty of the underlying offense.

Here, Mr. Power failed to present claim 6 to the state court and so he failed to develop the factual

basis of that claim in state court. In the present petition, he fails to show that any § 2254(e)(2)

exception applies.

Lastly, I recommend denying his request for an evidentiary hearing on claim 1. When

reviewing a federal habeas petition under § 2254(d), the court's "review is 'limited to the record

that was before the state court that adjudicated the claim on the merits.'" *Smith v. Aldridge*, 904

F.3d 874, 886 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170 (2011)). "[W]hen

[courts] review petitions under § 2254, [they] can only order evidentiary hearings if the

petitioner meets the requirements in *both* §§ 2254(d) and (e)(2)." *Id.* (emphasis in original). As

discussed above, I recommend finding that Mr. Power is not entitled to relief under § 2254(d) as

to claim 1 and he makes no showing that § 2254(e) applies in his case.[10] I thus recommend

denying his request for an evidentiary hearing.

## RECOMMENDATION

For the above-stated reasons, I recommend denying relief on all claims in Mr. Power's

"Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody"

(Doc. 1) and dismissing the petition with prejudice and without an evidentiary hearing.

I further recommend that Mr. Power is not entitled to a certificate of appealability. *See*

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding that to be entitled to a certificate of

appealability, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for

that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further").

_____
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

[10] In his reply, Mr. Power requests an evidentiary hearing specifically as to claim 1, pointing to the New Mexico Supreme Court decision in which the court declined to address this claim without a record. Doc. 11 at 4 (citing Doc. 10-2 at 287 (Ex. CC)). To the extent Mr. Power is arguing that the New Mexico Supreme Court did not decide this issue on the merits, and thus the § 2254(d) standard (for claims adjudicated on the merits in state court) does not apply, I recommend rejecting this argument. As discussed above, while the New Mexico Supreme Court did hold that Mr. Power failed to make a record of the issue sufficient for the court to review, it went on to address the merits of his claim, holding that, even if the record was as Mr. Power alleged, his claim would fail. Doc. 10-2 at 287-88. Thus, the court did review this claim on the merits; therefore, § 2254(d) applies.